(61 South. 130.)

No. 19,360.

## BUCCOLA v. SHREVEPORT TRACTION CO.

(Feb. 3, 1913.)

*(Syllabus by Editorial Staff.)*

1. CARRIERS (§ 346*)—PASSENGERS—INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain a finding that a street car passenger, injured by the sudden starting of the car, did not attempt to step from the car until it came to a full stop.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1401; Dec. Dig. § 346.*]

2. DAMAGES (§ 132*)—EXCESSIVE DAMAGES.

Where plaintiff's collar bone was broken by a fall resulting in his being in bed for a month and suffering great pain and causing two inguinal hernias which were very painful and greatly inconvenienced him, a verdict for $4,000 is excessive and will be reduced to $3,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from First Judicial District Court, Parish of Caddo; Edgar W. Sutherlin, Judge.

Action by Guessippi Buccola against the Shreveport Traction Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed for reduced amount.

Wise, Randolph & Rendall, of Shreveport, for appellant. Joseph H. Levy, of Shreveport, for appellee.

PROVOSTY, J. The plaintiff, an old Sicilian 81 years old, sues the defendant company in damages, charging that the electric street car of the defendant company upon which he was riding started off suddenly while he was in the act of alighting from it and caused him to fall and be injured.

The defense is that the plaintiff stepped off of the car before it had stopped, while it was going at the rate of some four to five miles an hour.

The old man supports his case by his own testimony to the effect that the car had come to a full stop, and started off again as he put his foot on the step in the act of getting off.

His daughter says that she was in the habit of keeping on the lookout for her father every evening in order to go to meet him and assist him home; that from where she stood in her house she saw the car stop, and feeling sure it was for her father, whom she thought she had recognized on the car, hastened out of the house for the purpose of meeting him; that the car started off, but stopped again suddenly as for an emergency stop; that before she reached the corner where the car had first stopped—the regular stopping place of the cars—she met the motorman and conductor helping her father along, one on each side of him.

John Berry, a colored man who was on the car, corroborates plaintiff and his daughter on the point that the car had come to a full stop.

The conductor says that the old man, without having given any signal for the car to stop, got up from his seat and walked to the platform and stepped off the car, although it was then going at the rate of four to five miles an hour; that when he saw the old man come upon the platform he gave the signal for an ordinary stop, and took hold of the old man's arm, and could have prevented him from getting off if he had known that his intention was to attempt to do so; and that, when he realized that such was his intention, it was too late to try to hold him back.

The motorman says that, after his car had gone some five feet beyond the post which marked the regular stopping place, he received one bell for an ordinary stop, and that in response to this signal he threw off his power and began winding his brake for an ordinary stop, when he received a signal for an emergency stop and obeyed it.

The old man was active for a man of his age, but he bore sufficiently the marks of time for strangers to volunteer their assistance in helping him off of the cars, sufficiently for the witness Berry to have had his attention attracted to him by the fact that a man so advanced in years should rise from his seat before the car had come to a full stop; and for his daughter to have been prompted to go to meet him every evening on his arrival. That a man in that physical condition should venture to attempt to alight from a car moving at the rate at which this one was is utterly improbable.

To offset this, the defendant offered several conductors of cars who testified that they had observed that this old man would never press the button or otherwise give any signal for the car to stop, but would simply get up from his seat and attempt to walk off the car; and that they would have to hold him back.

Against this testimony plaintiff offered witnesses who testified that they had observed the old man on the street cars, and that his manner was that of a cautious, prudent old man; and, indeed, slowness and cautiousness of movement is so natural to extreme old age that impetuosity and recklessness in such a case appears to us almost incredible.

"The heyday in the blood is tame, it's humble, and waits upon the judgment."

This disposition to step off of cars in motion might be believed of a man not in his right mind, or who had never, or perhaps seldom, traveled on street cars and was unacquainted with the proper manner of getting off, and at a loss how to go at it; but this old man had nothing the matter with his mind, was in regular employment as supervisor of the help in a restaurant, and had lived for years in the city of Shreveport, and been using the street cars daily, morning and evening.

[1] Minor circumstances are sought to be made much of by counsel pro and con to strengthen their respective sides. They appear to us of little importance. The evidence is very nearly evenly balanced. In last analysis the case must depend upon which set of witnesses is to be believed. When this is the case, the verdict of the jury is usually approved; and we shall follow that course.

[2] The jury allowed $4,000 damages. Plaintiff's collar bone was broken in his fall. This injury kept him in bed for a month and caused him great pain. His fall, in addition, caused two inguinal hernias which are very painful and greatly inconvenience or discommode or cripple him. We think this amount is excessive and should be reduced to $3,000.

The judgment appealed from is reduced to $3,000, and, as thus reduced, is affirmed. Appellee to pay costs of appeal.